UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LAKEMA TATE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WELCH FOODS INC.,<br><br>Defendant. | Case No.<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Lakema Tate ("Plaintiff") brings this action on behalf of herself and all others similarly situated against Defendant Welch Foods Inc. ("Defendant"). Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to allegations specifically pertaining to herself which are based on personal knowledge.

**NATURE OF THE ACTION**

1. This class action aims to hold Welch Foods Inc. responsible for misleadingly marketing its Welch's 100% Grape Juice, White Grape (the "Products") without disclosing that they contain artificial preservative Potassium Metabisulfite.

2. Defendant's Welch's 100% Grape Juice, White Grape products hold mass appeal and dominate grocery store juice aisles nationwide. The mass appeal of the Products, however, rests on a hidden secret: the Products contain an artificial preservative. The Products prominently state: "100% Grape Juice" and "White Grape" on the front label, surrounded by pictures of what appear to be fresh, natural white grapes on the vine, and a statement "No Sugar Added," reinforcing the message that the Products are composed of only natural ingredients one could anticipate in a

1

"100% Juice" product. On the bottom of the label, the Products have a "NON GMO Project Verified"[1] image, again reinforcing the overall impression that the Products do not have any unnatural or lab-made ingredients, geared towards attracting consumers who are trying to avoid synthetic ingredients in their food. Just below the statement "White Grape," to the left of the Non GMO image, the label states "A Blend of Niagara and Other Grape Juices From Concentrate With Added Ingredients." Collectively, these representations are called the "Representations" in the complaint.



---

[1] On the Non GMO Project website, it states that the label is used so that consumers can avoid genetically modified organisms in their food. This involves "techniques such as using synthetic genetic sequences to change the organisms's genetic material … or forcing the combination of very unrelated organisms that would not normally reproduce in nature." Consumers look for the Non GMO label to promote "a more natural and resilient food system." https://www.nongmoproject.org/butterfly-label/

3. A reasonable consumer viewing the front labeling of the Products would come away with the impression that the Products are composed of only natural, real ingredients. Nothing about the front label would compel a reasonable consumer to flip the Products around to check whether, in fact, the Products contain *artificial* preservatives. Unless specifically told otherwise, a reasonable consumer seeking a "100% Juice" statement on a front label would believe that the product does not contain any artificial ingredients, let alone artificial preservatives. Defendant intentionally designed the labels so that consumers come away with that impression, as consumers place great value and are willing to pay more for juice products that they believe are all natural or contain only real ingredients, especially in food and beverage products. Indeed, the fact that a juice product is real or natural, and contains no artificial ingredients, are number one and two top attributes, respectively, that consumers look for when choosing to buy a juice product.[2]

4. However, the Products contain an artificial preservative, making the front labeling false and deceptive, and greatly devaluing the price and willingness that consumers would be willing to pay for the Products if they knew the truth.

5. The Products are also misbranded and misleading under relevant state regulations for juice products labeled as 100% juice. For instance, California's Sherman Food, Drug, and Cosmetic Law adopts FDA regulations for food and beverages as the laws of that state, such that a violation of any FDA regulation concerning food or beverages also violates California law. Cal.

---

[2] *See, e.g.,* https://www.innovamarketinsights.com/trends/juice-market-trends-in-the-us/ ("Real or natural ingredients is the top claim driving purchases in the juice market, chosen as an influential positioning by almost one third of consumers. No artificial flavors or colors paced second, chosen by over one-quarter of Americans…");
https://www.grandviewresearch.com/industry-analysis/100-percent-juice-market-report#:~:text=An%20increasing%20number%20of%20consumers,be%20free%20from%20artificial%20ingredients (consumers prefer 100% juice products because they perceive them as natural and healthier);

Health & Safety Code § 110100(a). In turn, the FDA has the following rule with respect to products labeled as "100% Juice":

> If the beverage contains 100 percent juice and also contains non-juice ingredients that do not result in a diminution of the juice soluble solids or, in the case of expressed juice, in a change in the volume, when the 100 percent juice declaration appears on a panel of the label that does not also bear the ingredient statement, it must be accompanied by the phrase "with added _____," the blank filled in with a term such as "ingredient(s)," "preservative," or "sweetener," as appropriate (e.g., "100% juice with added sweetener"), except that when the presence of the non-juice ingredient(s) is declared as a part of the statement of identity of the product, this phrase need not accompany the 100 percent juice declaration.

21 C.F.R. § 101.30(b)(3)

6. Defendant's Products do not follow this rule. The Products contain the statement "with added ingredients." But that is not an "appropriate" modifier, as "preservative" should have been used. For instance, the FDA's Guidance for Industry A Food Labeling Guide[3] provides the following questions and answers on the subject:

> **J23. I have a 100% juice drink and add a non juice ingredient. May I still call it 100% juice?**
>
> **Answer:** If the added ingredient does not dilute the juice or, for an expressed juice, change its volume, you may continue to call it 100% juice but the percent juice statement must identify the added ingredient, e.g., "100% juice with added preservative." 21 CFR 101.30(b)(3) and 101.54(e)
>
> **J.24. What if the added substance is also a nutrient such as Vitamin C (ascorbic acid)?**
>
> **Answer:** If ascorbic acid is added at levels consistent with fortification of the juice, a declaration as part of the percent juice statement would constitute a nutrient content claim which would trigger compliance with more claims including the required accompanying information. If it were added at the level used as a preservative, then a statement such as 100% juice with preservative could be used. In this case it would be listed in the ingredient statement as a preservative in accordance with 101.22(j).

---

[3] Available at https://www.fda.gov/files/food/published/Food-Labeling-Guide-%28PDF%29.pdf

7. Given that artificial preservatives are such a turn-off for consumers buying what they perceive as a natural 100% juice product, it is not appropriate, and is misleading, for Defendant to simply state "with added ingredients," as opposed to "with added preservatives." Otherwise, the term "as appropriate" would be read out of the statute. The difference between "with added ingredients" and "with added preservatives" is stark for consumers. Given the rest of the labeling, a reasonable consumer seeing the statement "with added ingredients" would have no reason, based on the rest of the Products' front labeling, to think that there was anything artificial, let alone artificial preservatives, in the Products. Such reasonable consumers would have no reason to think that they needed to look elsewhere on the Products' labels to check whether artificial preservatives are present in the Products.

8. Under 21 C.F.R. § 101.22(c), "[a] statement of artificial flavoring, artificial coloring, or chemical preservative shall be placed on the food or on its container or wrapper, or on any two or all three of these, as may be necessary to render such statement likely to be read by the ordinary person under customary conditions of purchase and use of such food." "The term *chemical preservative* means any chemical that, when added to food, tends to prevent or retard deterioration thereof, but does not include common salt, sugars, vinegars, spices, or oils extracted from spices, substances added to food by direct exposure thereof to wood smoke, or chemicals applied for their insecticidal or herbicidal properties." 21 C.F.R. § 101.22(a)(5). Here, in the context of the overall label, and given the instructions of 21 C.F.R. § 101.30(b)(3) to disclose preservatives on the front label of the Products, disclosing the presence of the artificial preservatives here only in small print, *on the back of the Products' labels*, did not render the "statement likely to be read by the ordinary person under customary conditions of purchase and use of such food." Reasonable consumers buying what they believe are natural 100% grape juice

products have no reason to go searching the rest of the Products' labels to see whether artificial/chemical ingredients are present in the Products.

9. Plaintiff brings this false advertising action on behalf of herself and other purchased of the Products.

## PARTIES

10. Plaintiff Lakema Tate is an individual residing in Los Angeles, California. Several times within the past year (and in years prior), Plaintiff Tate purchased Welch's 100% Grape Juice, White Grape from multiple retail locations (such as Ralph's and Pavilions) near her home in Los Angeles, California. Prior to her purchase of the Products, Plaintiff Tate reviewed the Products' labeling and packaging and read and relied on the Products' Representations. Plaintiff Tate came away believing, based on the Representations, that the Products did not contain any synthetic ingredients or preservatives. Plaintiff would not have bought the Products, or would not have bought them on the same terms, if she knew that those Representations were false and misleading because the Products contain artificial preservatives.

11. Plaintiff remains interested in purchasing the products at issue. However, she cannot know for certain whether the false labeling has been or will be corrected. The composition of the products may change over time, but if Defendant continues to make the representations at issue here, then, when presented with false or misleading information while shopping, Plaintiff will be unable to make informed decisions about whether to purchase the subject Products. Plaintiff is further likely to be repeatedly misled by Defendant's conduct, unless and until Defendant is compelled to ensure that the product's marketing is accurate and no longer has the tendency or capacity to deceive or confuse reasonable consumers.

12. Plaintiff has no past or present financial, employment, familial, or other relationship with any of the attorneys in this case that would create a conflict of interest with the proposed class members.

13. Defendant Welch Foods Inc. is a Michigan corporation based in Massachusetts. Defendant advertises, distributes, and sells the subject Products nationwide, including in California and Massachusetts. Defendant is headquartered in Massachusetts, and manufactures and sells the Products from Massachusetts. Defendant's headquarters and principal office are located at 300 Baker Avenue Suite 101, Concord, Massachusetts 01742. All relevant decisions concerning the composition and labeling of the Products occurred from Defendant's Massachusetts's headquarters. Each of the subject Products includes Defendant's name on the label. Defendant is responsible for the labeling of the subject Products, and their formulation.

## JURISDICTION AND VENUE

14. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(a) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, and at least one member of the proposed class is citizen of state different from defendant.

15. This court has personal jurisdiction over Defendant because it is headquartered and has its principal place of business in Massachusetts.

16. Venue is proper in this district under 28 U.S.C. § 1391 because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District.

## FACTUAL ALLEGATIONS

17. **Products at Issue:** Defendant's Welch's 100% Grape Juice, White Grape products that defendant sells at retail to consumers nationwide.

18. **Relevant Time Period:** the deceptive labeling and packaging at issue here was consistent during the last four years, at least.

19. **Misrepresentations and Omissions at Issue:** the labeling of each of the products states the following: The Products prominently state: "100% Grape Juice" and "White Grape" on the front label, surrounded by pictures of what appear to be fresh, natural white grapes on the vine, and a statement "No Sugar Added," reinforcing the message that the Products are composed of only natural ingredients one could anticipate in a "100% Juice" product. On the bottom of the label, the Products have a "NON GMO Project Verified" image, again reinforcing the overall impression that the Products do not have any unnatural or lab-made ingredients, geared towards attracting consumers who are trying to avoid synthetic ingredients in their food. Just below the statement "White Grape," to the left of the Non GMO image, the label states "A Blend of Niagara and Other Grape Juices From Concentrate With Added Ingredients."

20. The front labels of the products omit any mention of artificial preservatives in the products, despite the products containing potassium metabisulfite, an artificial preservative.

21. **How/Why the Labeling is Misleading:** consumers are misled by the representations because the products are not composed of only real ingredient found in nature, and because defendant omitted the presence of artificial preservatives despite being required to do so under relevant FDA and state regulations. Consumers place great value on the products purportedly being 100% juice products derived from real, natural ingredients, and are misled by the above representations and Defendant's omission of the fact that the products contain an artificial preservative. The Products would have been worth substantially less to consumers had they known, and had Defendant disclosed on the Products' front labels, that the Products contain an artificial preservative.

## **CLASS ACTION ALLEGATIONS**

22. Plaintiff brings this action on behalf of all people the following classes and subclasses:

> <u>Nationwide class</u>: all people in the United States who purchased a subject Product for personal or household use during the last four years.
>
> <u>California class</u>: all people in California who purchased a subject Product for personal or household use during the last four years.
>
> <u>Multi-State Consumer Protection Class</u>: all people who purchased the Products for personal or household use (1) in the states of Michigan, Minnesota, or New Jersey within the applicable statute of limitations; (2) in the state of Missouri within the applicable statute of limitations; (3) in the states of California, Florida, Massachusetts, or Washington within the applicable statute of limitations; or (4) in the states of Illinois and New York within the applicable statute of limitations.

23. Subject to additional information obtained through further investigation and discovery, the foregoing class definitions may be expanded or narrowed by amendment or in the motion for class certification, including through the use of multi-state subclasses to account for material differences in state law, if any.

24. Specifically excluded from the putative classes are Defendant and any entities in which Defendant has a controlling interest, Defendant's agents and employees, the judge to whom this action is assigned, members of the judge's staff, and the judge's immediate family.

25. *Numerosity*. Members of the Class are so numerous that their individual joinder herein is impracticable. On information and belief, each Class or Subclass includes thousands of consumers. The precise number of Class Members and their identities are unknown to the Plaintiff at this time but may be determined through discovery. Class Members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant or other means.

26. ***Commonality and Predominance***.  Common questions of law and fact exist as to all Class Members and predominate over questions affecting only individual Class Members. Common legal and factual questions include, but are not limited to:

27. Whether potassium metabisulfite is an artificial preservative;

28. Whether the product packaging has the tendency or capacity to deceive or confuse a reasonable consumer;

29. Whether Defendant intended to deceive consumers;

30. Whether Defendant is liable to Plaintiffs and Class members under the causes of action alleged in this complaint;

31. Whether the Products are misbranded under relevant state law; and

32. Whether Plaintiffs and Class members are entitled to any of the forms of relief they seek in this action.

33. ***Typicality***.  The claims of the Plaintiff are typical of the claims of the Classes in that Plaintiff and the Classes sustained damages as a result of Defendant's uniform wrongful conduct, as alleged above.

34. ***Adequacy***.  Plaintiff will fairly and adequately protect the interests of Class members.  Plaintiff has retained counsel that is highly experienced in complex consumer class action litigation, and Plaintiff intends to vigorously prosecute this action on behalf of the Class. Plaintiff has no interests that are antagonistic to those of the Class.

35. ***Superiority***.  A class action is superior to all other available methods for the fair and efficient adjudication of this controversy for, *inter alia*, the following reasons: prosecutions of individual actions are economically impractical for members of the Classes; the Classes are readily definable; prosecution as a class action avoids repetitious litigation and duplicative litigation costs,

conserves judicial resources, and ensures uniformity of decisions; and prosecution as a class action permits claims to be handled in an orderly and expeditious manner.

36. Defendant has acted or failed to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief with respect to the Classes as a whole.

37. Without a class action, Defendant will continue a course of action that will result in further damages to the Plaintiff and Members of the Classes and will likely retain the benefits of its wrongdoing.

## FIRST CAUSE OF ACTION
### Violations of California's Unfair Competition Law ("UCL")
### Cal. Bus. & Prof. Code §§ 17200, *et seq.*

38. Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

39. Plaintiff brings this cause of action individually and on behalf of the California subclass.

40. California Business & Professions Code Section 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

41. Defendant acted with knowledge and intent.

42. Plaintiff alleges a claim under all three prongs of the UCL.

43. As alleged above, Defendant engaged in fraudulent conduct that had the tendency or capacity to deceive or confuse reasonable consumers.

44. Defendant's conduct also constitutes "unfair" business acts and practices within the meaning of the UCL, in that its conduct was injurious to consumers, offended public policy, and was unethical and unscrupulous. Defendant's violation of consumer protection and unfair competition laws resulted in harm to consumers.

45. Plaintiff also alleges a violation under the "unlawful" prong of the UCL because Defendant's conduct violated consumer protection laws, the common law as set forth herein, and Cal. Health & Safety Code § 110100(a), as discussed above.

46. As a direct and proximate result of Defendant's unfair, unlawful, and deceptive practices, Plaintiff and the other members of the Class have suffered and will continue to suffer out-of-pocket losses.

47. Plaintiff and class members have suffered an injury in fact resulting in the loss of money and/or property as a proximate result of the violations of law and wrongful conduct of Defendant alleged herein, and they lack an adequate remedy at law to address the unfair conduct at issue here. Legal remedies available to Plaintiff and class members are inadequate because they are not equally prompt and certain and in other ways efficient as equitable relief. Damages are not equally certain as restitution because the standard that governs restitution is different than the standard that governs damages. Hence, the Court may award restitution even if it determines that Plaintiff fails to sufficiently adduce evidence to support an award of damages. Damages and restitution are not the same amount. Unlike damages, restitution is not limited to the amount of money defendant wrongfully acquired plus the legal rate of interest. Equitable relief, including restitution, entitles a plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize. Legal claims for damages are not equally certain as restitution because claims under the UCL entail few elements. In short, significant differences in proof and certainty establish that any potential legal claim cannot serve as an adequate remedy at law.

48. Equitable relief is appropriate because Plaintiff may lack an adequate remedy at law if, for instance, damages resulting from their purchase of the Product is determined to be an

amount less than the premium price of the Product. Without compensation for the full premium price of the Product, Plaintiff would be left without the parity in purchasing power to which they are entitled.

49. Plaintiff seeks all relief available under the UCL.

**SECOND CAUSE OF ACTION**
**Violation of California's False Advertising Law**
**Cal. Bus. & Prof. Code. §§ 17500, et seq.**

50. Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

51. Plaintiff brings this cause of action individually and on behalf of the California subclass.

52. Defendant violated California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 by engaging in the conduct alleged above.

53. Defendant knew or should have known that its conduct was false and/or misleading.

54. Defendant knew or should have known that its conduct was false and/or misleading.

55. Plaintiff lacks an adequate remedy at law for the reasons already alleged above in connection with the UCL claim.

56. Plaintiff and class members have suffered harm as a result of Defendant's violations of the FAL.

57. Plaintiff seeks all available relief under the FAL.

**THIRD CAUSE OF ACTION**
**Violations of California's Consumer Legal Remedies Act ("CLRA")**
**Cal. Civ. Code §§ 1750, et seq.**

58. Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

59. Plaintiff brings this cause of action individually and on behalf of the California subclass.

60. Defendant is a "person" as defined by California Civil Code § 1761(c).

61. Plaintiff and the other Class members are "consumers" within the meaning of California Civil Code § 1761(d).

62. For the reasons alleged above, Defendant violated California Civil Code § 1770(a)(5)(7) and (9).

63. Plaintiff provided pre-suit notice of the claims asserted under the CLRA via certified mail, return receipt requested, in compliance with all of the CLRA's requirements.

64. Defendant's unfair and deceptive acts or practices occurred repeatedly in Defendant's trade or business.

65. Defendant acted with knowledge and intent.

66. As alleged above, Defendant engaged in conduct that had the tendency or capacity to deceive or confuse reasonable consumers.

67. With respect to the CLRA claim, Plaintiff alleges in the alternative that she lacks an adequate remedy at law for the reasons already alleged above in connection with the UCL claim.

68. As a result of Defendant's misconduct, Plaintiff and other Class members have suffered monetary harm.

69. Plaintiff seeks all relief available under this cause of action, other than damages. Plaintiff may amend the Complaint in the future to add a damages claim.

## FOURTH CAUSE OF ACTION
### Unjust Enrichment

70. Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

71. Plaintiff brings this cause of action individually and on behalf of the nationwide class and the California Subclass against Defendant.

72. Plaintiff asserts this cause of action under the laws of Massachusetts, or, in the alternative, California.

73. To the extent required, Plaintiff asserts this cause of action in the alternative to legal claims, as permitted by Rule 8.

74. Plaintiff and the Class Members conferred a benefit on Defendant in the form of the gross revenues Defendant derived from the money they paid to Defendant.

75. Defendant knew of the benefit conferred on it by Plaintiff and the Class Members.

76. Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff's and the Class Members' purchases of the Products, which retention of such revenues under these circumstances is unjust and inequitable because Defendant omitted that the Product contained artificial preservatives. This caused injuries to Plaintiff and Members of the Classes because they would not have purchased the Product or would have paid less for them if the true facts concerning the Product had been known.

77. Defendant accepted and retained the benefit in the amount of the gross revenues it derived from sales of the Product to Plaintiff and the Class Members.

78. Defendant has thereby profited by retaining the benefit under circumstances which would make it unjust for Defendant to retain the benefit.

79. Plaintiff and the Class Members are, therefore, entitled to restitution in the form of the revenues derived from Defendant's sale of the Product.

80. As a direct and proximate result of Defendant's actions, Plaintiff and the Members of the Classes have suffered in an amount to be proven at trial.

81. Putative class members have suffered an injury in fact and have lost money as a result of Defendant's unjust conduct.

82. Putative class members lack an adequate remedy at law with respect to this claim and are entitled to non-restitutionary disgorgement of the financial profits that Defendant obtained as a result of its unjust conduct.

## FIFTH CAUSE OF ACTION
### Fraud by Omission / Intentional Misrepresentation

83. Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

84. Plaintiff brings this cause of action individually and on behalf of the nationwide class and the California subclass.

85. Plaintiff asserts this cause of action under the laws of Massachusetts, or, in the alternative California.

86. This claim is based on fraudulent omissions concerning the artificial preservatives of the Products.

87. The false and misleading omissions were made with knowledge of their falsehood. Defendant knew the true nature of the Product and its ingredients. Nonetheless, Defendant continued to sell the Product using the false and misleading omissions alleged herein to unsuspecting consumers.

88. The false and misleading omissions were made by Defendant, upon which Plaintiff and Class Members reasonably and justifiably relied, and were intended to induce and actually induced Plaintiff and Class Members to purchase the Product.

89. The fraudulent actions of Defendant caused injury to Plaintiff and Class Members, who are entitled to damages and punitive damages.

90. Plaintiff seeks all relief available under this cause of action.

### PRAYER FOR RELIEF

91. WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

    a) For an order certifying the Class and naming Plaintiff as the representatives of the Class or Classes;

    b) For an order declaring Defendant's conduct violates the statutes referenced herein;

  c)  For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

  d)  For actual, compensatory, statutory, and/or punitive damages in amounts to be determined by the Court and/or jury;

  e)  For prejudgment interest on all amounts awarded;

  f)  For an order of restitution and all other forms of equitable monetary relief;

  g)  For injunctive relief as pleaded or as the Court may deem proper; and

  h)  For an order awarding Plaintiff and the Classes their reasonable attorneys' fees, expenses, and costs of suit.

## JURY TRIAL DEMANDED

92. Plaintiff demands a trial by jury on all claims so triable.

Dated: March 12, 2025      Respectfully submitted,

**SMITH KRIVOSHEY, P.C.**

By: */s/ Joel D. Smith*
   Joel D. Smith

Joel D. Smith (BBO 712418)
867 Boylston Street, 5th Floor #1520
Boston, MA 02116
Telephone: (617) 377-7404
Email: joel@skclassactions.com

Yeremey O. Krivoshey (Cal. SBN 295032)
(*pro hac vice* motion forthcoming)
SMITH KRIVOSHEY, PC
166 Geary Str STE 1500-1507
San Francisco, CA 94108
Telephone: 415-839-7077
Facsimile: (888) 410-0415
E-Mail: yeremey@skclassactions.com

*Attorneys for Plaintiff and the proposed Classes*

**CLRA Venue Declaration, Civil Code § 1780(c)**

I, Joel D. Smith, declare as follows:

1.  I have personal knowledge to the facts stated herein and, if called upon to do so, could competently testify hereto.

2.  I am the attorney for Plaintiff in the above-captioned action.

3.  I submit this declaration in support of the Class Action Complaint, which is based in part on violations of the Consumers Legal Remedies Act, California Civil Code § 1750 *et seq*.

4.  The Class Action Complaint has been filed in the proper place for trial of this action.

5.  It is my understanding that Defendant regularly transacts business in this District, and is headquartered in this District.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge. Executed on March 12, 2025 in Danielson, Connecticut.

By: /s/ Joel D. Smith
Joel D. Smith